**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**HATT 65, L.L.C., and FRANK W.
BOYKIN II FAMILY TRUST,**

**Plaintiffs,**

**vs.**                                                    **Case No. 3:06cv332/MCR**
                                                              **IN ADMIRALTY**

**TERRY KREITZBERG; S/V "ESCAPE,"
in rem; and GREAT LAKES REINSURANCE
(UK) PLC,**

**Defendants.**

_____/

**O R D E R**

This admiralty and maritime case was filed by plaintiffs Hatt 65, L.L.C., and Frank
W. Boykin II Family Trust against defendants Terry Kreitzberg; the S/V *Escape*, in rem; and
Great Lakes Reinsurance (UK) PLC.[1]   The case is presently before the court on the
"Motion to Dismiss Claim for Loss of Market Value" filed by Kreitzberg and *Escape*.  For
the reasons given below, the court grants the defendants' motion.

**Background**

Hurricane Dennis, a category three storm, struck Northwest Florida in July 2005.
In their amended complaint plaintiffs allege that Kreitzberg's 55' Tayana ketch sailboat
*Escape* broke lose from its mooring during the hurricane and allided with Hatt 65's vessel
*The WEJ*, a 1990 65' Hatteras convertible sport fisherman.  The alleged allision resulted

---

[1]  Respectively, "Hatt 65," "Boykin Trust" (together, "plaintiffs"),  "Kreitzberg," "*Escape*," and "Great
Lakes."

in significant damage to *The WEJ* and the Boykin Trust's dock, to which *The WEJ* was tied, and to other property owned by the Trust.  Count I of the amended complaint is a third party negligence claim against the defendants for which plaintiffs seek damages, interest, and costs as relief.  Count II is a first party claim against Great Lakes for failing to provide adequate compensation for plaintiffs' insured losses; plaintiffs seek as relief damages, interest, consequential and incidental damages, costs, and attorneys' fees.

Previously, the court denied the parties' cross motions for partial summary judgment or summary judgment on the issue of liability.[2]  The court granted the defendants leave to file a motion to dismiss, however, on the novel legal issue of whether plaintiffs could recover for loss of market value of a luxury private yacht such as *The WEJ*.  In their instant motion to dismiss, Kreitzberg and *Escape* argue that the remedy sought by plaintiffs simply is not available under general maritime law.  Rather, defendants submit, the law is long and well-established that damages to vessels which result from a marine collision are limited to the reasonable cost of repairs.  In opposition, plaintiffs contend that defendants have not shown that, under admiralty and maritime law as well as the Restatement of Torts and Florida law, the court could not permit a claim for loss of market value damages to a luxury pleasure craft which results from a marine collision.[3]

**Discussion**

The invocation of federal admiralty jurisdiction results in the application of federal admiralty law rather than state law.  *See Kossick v. United Fruit Co.*, 365 U.S. 731, 81 S.Ct. 886 (1961).  State law may be applied only where it does not conflict with or disturb

---

[2]  Great Lakes did not join in the prior motions for partial summary judgment filed by Kreitzberg and *Escape* nor does it join in the motion now before the court.

[3]  Plaintiffs erroneously cite and seek to apply the standard for analyzing motions for summary judgment. The instant motion is a motion to dismiss, not a motion for summary judgment.
Additionally, plaintiffs argue that defendants' motion consists of little more than a rehash of their prior motion on the issue, which the court deemed insufficiently instructive, and thus should be denied on that basis alone.  Even if the court agreed that the motion at bar was not adequately presented, which it does not, it would not deny the motion on the insubstantial ground suggested by plaintiffs.

the uniformity of maritime law.  *Diesel "Repower," Inc. v. Islander Investments*, 271 F.3d 1318,

1323-24 (11th Cir. 2001); *Steelmet, Inc. v. Caribe Towing Corp.*, 779 F.2d 1485 (11th Cir. 1986); *Norwegian Cruise Lines, Ltd. v. Zareno*, 712 So.2d 791 (Fla. 3d DCA 1998).  Thus in most instances when a "cause of action arises under the maritime law, the damages issues are decided under federal rather than state law." *Freeport Sulphur Co. v. S/S Hermosa*, 526 F.2d 300, 302 n.2 (5th Cir. 1976).[4]

Admiralty courts generally apply the doctrine of *restitutio in integrum* to determine damages to a vessel resulting from a maritime collision.  *City of Milwaukee v. Cement Div., Nat. Gypsum Co.*, 515 U.S. 189, 196, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995), citing *Standard Oil Co. of N.J. v. Southern Pacific Co.*, 268 U.S. 146, 158, 45 S.Ct. 465, 467-68, 69 L.Ed. 890 (1925), and *The Baltimore*, 75 U.S. (8 Wall.) 377, 385, 19 L.Ed. 463 (1869)). Under the doctrine of *restitutio in integrum*, maritime collision damages that do not result in the total loss of the vessel typically are measured as the reasonable "cost of necessary repairs and the loss of earnings while they are being made." *Delta Marine Drilling Co. v. M/V Baroid Ranger*, 454 F.2d 128, 129 (5th Cir.1972) (citing *The Pocahontas*, 109 F.2d 929, 931 (2nd Cir. 1940) ("[T]he measure of damages is the difference in value of the ship before and after the collision, but the cost of the necessary repairs and the loss of earnings while they are being made have long been regarded as its equivalent . . . .");*Tug June S v. Bordagain Shipping Co.*, 418 F.2d 306, 307 (5th Cir. 1969); *Hewlett v. Tug Evelyn*, 283 F.Supp. 917, 919 (E.D.Va. 1968)

In this case, the parties agree that as a general matter the doctrine of *restitutio in integrum* should apply to plaintiffs' negligence claim.  They disagree, however, as to how the doctrine should be applied to the specific facts here, which involve a pleasure yacht

---

[4] *See Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th 1981) (*en banc*) (adopting all decisions of the former Fifth Circuit announced prior to October 1, 1981, as binding precedent in the Eleventh Circuit).

held for resale rather than a ship used in commerce.  The parties also apparently disagree as to the applicability of state law.  Defendants argue that the doctrine of *restitutio in integrum* should be strictly applied here as it has been traditionally applied to all seagoing vessels, *i.e.*, applying longstanding principles of admiralty and maritime law, the court cannot permit plaintiffs to seek damages for loss of market value to their luxury personal craft.  Plaintiffs, on the other hand, contend that their damages claim is permissible because they are entitled to be restored to the same position regarding the value of *The WEJ* which they held prior to the collision, *i.e.*, under admiralty, maritime law, and state law principles the court should permit them to recover damages for diminution in the vessel's market value due to the stigma of its having been in a collision.

In the instant case, this court concludes it should apply the doctrine of *restitutio in integrum* as it has been applied by courts sitting in admiralty for decades.  So doing, the court concludes that plaintiffs cannot bring a claim for loss of market value damages.  In the court's view, to extend the doctrine of *restitutio in integrum* in order to allow plaintiffs in this case to recover alleged loss of market value damages to their luxury personal yacht, particularly since the court is aware of no case in which such damages have been permitted for any type of vessel, would disturb the uniformity of maritime law. *Diesel "Repower," Inc. v. Islander Investments*, 271 F.3d at 1323-24.  Moreover, under the facts and arguments of this case there is no basis for deciding this damages issue under principles of state law.

As to both issues, plaintiffs cite no case law or other authority that persuades the court it should find otherwise.  For example, plaintiffs point to language in *Dominican Maritime, S.A. v. M/V Inagua Beach*, 572 F.2d 892, 893 (1st Cir. 1978), an admiralty case which they contend supports their view of the *restitutio in integrum* doctrine.  The court reads the cited passage, however, as merely restating the general rule: "An owner whose boat is damaged by the negligence of another is entitled to have his boat *repaired* in a way which will not leave her essentially depreciated in her market value, or inferior for practical

use." *Dominican Maritime*, 572 F.2d at 893 (emphasis added).  The *Dominican Maritime* court was referring to the owner's right to have repairs performed in such a way as to not render a reduction in market value to the vessel; the cited language does not suggest the court was proposing the owner was entitled to possible stigma damages connected with the vessel's involvement in a maritime collision.   Additionally, plaintiffs cite *Finkel v. Challenger Marine Corp.*, 316 F.Supp. 549, 555 (S.D. Fla. 1970), for the proposition that, under the modern view, private pleasure yachts may be treated similarly to other repairable chattel such as automobiles.  Citing *The Conquerer*, 166 U.S. 110, 17 S.Ct. 510, 41 L.Ed. 937 (1987), as an example of antiquated case law in which loss of use damages were permitted only where actual pecuniary loss could be shown, the court instead adopted the "more modern view" espoused in *Brooklyn Eastern District Terminal v. United States*, 287 U.S. 170, 53 S.Ct. 103, 77 L.Ed. 240 (1932), which held that the cost of renting a replacement vessel as a measure of loss of use damages was proper provided there was some sort of loss, even if that loss simply involved loss of enjoyment or opportunity.  The *Finkel* court therefore awarded the plaintiff loss of use damages, apparently without a showing of actual monetary loss.  *Id.*  In *Central State Transit & Leasing Corp. v. Jones Boat Yard, Inc.*, 206 F.3d 1373 (11th Cir. 2000), however, the Eleventh Circuit specifically disagreed with *Finkel*, finding that *Brooklyn Eastern District Terminal* did not overrule *The Conquerer*, even in part, and that loss of use damages were not appropriate where no pecuniary loss was demonstrated. *Id.* at 1377 n. 2   Furthermore, to the extent plaintiffs' argument is that private yachts are treated differently than commercial vessels for purposes of loss of use damages and thus, as personal chattel, private yachts should also be treated differently for purposes of loss of market value damages, the argument fails. Plaintiffs point to no case law and make no even mildly cogent argument in support of such a proposition.

Plaintiffs cite two cases in connection with their argument that under the Restatement of Torts and Florida law they should be permitted to pursue their claim in

admiralty for loss of market value damages to *The WEJ*.  Both of the cited cases, *Merrill Stevens Dry Dock Co. v. Nicholas*, 470 So.2d 32, 33 (Fla. 3rd DCA 1985), and *Bayboro Marine, Inc. v. MacFarlane*, 484 So.2d 1380 (Fla. 2nd DCA 1986), involve damages to vessels caused by the negligence of a boat repairer or dry dock company.  In neither case, however, does it appear that the plaintiff expressly invoked admiralty jurisdiction; moreover, in both cases the court seems to have decided the issues related to the plaintiffs' negligence claims for damage to their chattel using state law only, with no reference to the principles or applicability of admiralty or maritime law.  Plaintiffs offer nothing to support their contention that the damages issues before the court in this admiralty case should be decided under state law. *Freeport Sulphur Co.*, 526 F.2d at 302 n.2.

Plaintiffs submit that the "time is ripe to look anew at some of the rules applied in maritime law."[5] (Doc. 135 at 11).  As discussed above, the court declines to do so in this case.  Rather, applying traditional principles of admiralty and maritime law, the court concludes that no construction of the allegations of the amended complaint will support plaintiffs' demand for loss of market value damages. The court therefore grants defendants' motion to dismiss.[6]  *See* Marshall *County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (finding that under Rule 12(b)(6), dismissal of a complaint is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.").

The court wishes to address one final matter.  Although the parties have twice mediated this case without success, the court believes it is worth inquiring whether additional mediation at the current juncture might be fruitful.  The court therefore will

---

[5]  As additional support for this proposition, plaintiffs cite a statement from treatise on maritime law by Charles M. Davis, *Maritime Law Deskbook* (2005), which they submit supports their argument that loss of market value damages should be allowed for private yachts.  To the extent the treatise take the position plaintiffs suggest, as plaintiffs acknowledge this view does not represent the current state of the law.

[6]  Defendants do not identify the rule of procedure pursuant to which they move for dismissal of plaintiffs' claim for loss of market value damages, but presumably they seek to proceed under Federal Rule of Civil Procedure 12(b)(6).

require the parties to file a joint notice so advising.  If the parties inform the court that additional mediation is unlikely to be successful, the court shall set this matter for a bench trial on the earliest available date.

Accordingly, it is ORDERED:

1.      The "Motion to Dismiss Claim for Loss of Market Value" filed by defendants Kreitzberg and *Escape* (doc. 125) is GRANTED.

2.      The parties shall file a joint notice no later than **March 23, 2009**, advising the court whether they believe additional mediation of Counts I and II of the amended complaint might be successful.

**DONE and ORDERED** this 16th day of March, 2009.


*M. Casey Rodgers*
_____
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**